**Morton HOLLAND, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 5, 1956.

C. A. Noble, Jr., Hazard, for appellant.

Jo M. Ferguson, Atty. Gen., Hugh L. Hollingsworth, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Morton Holland, was convicted of carrying concealed a deadly weapon, and was sentenced to confinement in the penitentiary for a period of two years.

Appellant was appointed deputy sheriff of Breathitt County on August 26, 1955. Sometime prior to September 21, 1955, a justice of peace of Perry County delivered to Holland two warrants; one for the arrest of Bill Krintz, and the other for the arrest of Willie Strong. Holland had received information that Strong had moved to Perry County and was seen frequently in beer taverns there.

On the night of September 21, Holland entered Perry County with the intention to locate Strong and then to inform the sheriff of Perry County so that an arrest might be made pursuant to the warrant. He arrived at a tavern on Duane Mountain in Perry County about dark and commenced to drink beer in the company of Miss Jackie Steel. He testified that he carried a loaded 45 automatic in his front pocket and wore a sport shirt outside his trousers. When he entered a booth he took the gun from the pocket of his tight trousers and placed it on the seat of the booth.

Later three deputy sheriffs of Perry County, in discharge of their duty to check roadhouses, stopped at the tavern and two of the deputies, Jack Fields and Cephus Begley, went inside. They noticed the appellant drinking with a woman. There was no disorder so they returned to their car. Before they left, someone came from within the tavern and reported that the appellant was making trouble inside and was flourishing a gun. The three deputies reentered the building and when Fields started toward him, Holland arose and pointed the automatic pistol at Fields. The deputies testified that he drew the gun from under his shirt. Holland stated he picked it up from the seat of the booth, but, in any event, he pointed the weapon at Fields and told the deputies to back out of the tavern. They did. A warrant for carrying concealed a deadly weapon was obtained and later Holland was arrested in Perry County at his own establishment, which was also a beer tavern, situated a few miles from where the incident just related occurred. Appellant justified his action by stating that he had seen deputy sheriff Fields beat up people and he did not want to be beaten up himself.

Appellant was punished in the quarterly court for his action in flourishing the gun by being fined the sum of $50, so we are concerned here only with the remaining charge. Appellant contends that he was entitled to a peremptory instruction of acquittal because he was a duly appointed peace officer.

Section 1, subd. 7 of the Bill of Rights, which is concerned with inherent and inalienable rights, grants to all citizens:

"The right to bear arms in defense of themselves and of the State, subject to the power of the General Assembly to enact laws to prevent persons from carrying concealed weapons."

The foregoing section is an exemplification of the broadest expression of the right to bear arms. Some states give the legislature the right to regulate the carrying of firearms; at least one state prohibits even the possession of firearms. See cases collected in the annotation of Pierce v. State of Oklahoma, 42 Okl.Cr. 272, 275 P. 393, 73 A.L.R. 833.

In our state the legislature is empowered only to deny to citizens the right to carry concealed weapons. The constitutional provision is an affirmation of the faith that all men have the inherent right to arm themselves for the defense of themselves and of the state. The only limitation concerns the mode of carrying such instruments. We observe, via obiter dicta, that although a person is granted the right to carry a weapon openly, a severe penalty is imposed for carrying it concealed. If the gun is worn outside the jacket or shirt in full view, no one may question the wearer's right so to do; but, if it is carried under the jacket or shirt, the violator is subject to imprisonment for not less than two nor more than five years. The heavy emphasis, we suppose, is upon the undue advantage given to a person who is able suddenly to expose and use a weapon, although the gun itself is the vicious instrument. Nevertheless the meaning of the constitutional provision is plain and the legislature has exercised the power granted it by enacting KRS 435.230, which reads:

"(1) Any person, not expressly authorized by law, who carries concealed a deadly weapon, other than an ordinary pocket knife, on or about his person, or any person who sells a deadly weapon, other than an ordinary pocket knife, to a minor, shall be confined in the penitentiary for not less than two nor more than five years.

"(2) Sheriffs, constables, marshals, policemen and other ministerial officers, when necessary for their protection in the discharge of their official duties; United States mail carriers, when actually engaged in their duties; and agents and messengers of express companies, when necessary for their protection in the discharge of their official duties, may carry concealed deadly weapons on or about their persons."

It was sufficiently proved that appellant was a duly constituted deputy sheriff of Breathitt County and was permitted under subsection (2) above quoted to conceal a pistol when actually engaged in his duties

We have had several cases in this state which deal generally with the problem here presented. In Johnson v. Commonwealth, 212 Ky. 372, 279 S.W. 341, 342, the court indicated that usually the question was one for the jury and that the accused was entitled to a concrete instruction under the statute as to whether under the facts proven, it was necessary for the officer to carry a concealed weapon in the discharge of his official duties, and it was pointed out:

"In some localities there is seldom if ever an occasion for the exercise of such authority. In such communities perhaps it would be unnecessary for an officer to carry arms for his protection except in the discharge of an actual duty, as above indicated. On the other hand, in congested districts and

lawless communities an emergency may arise at any time, and an unarmed officer be powerless to protect himself or to exercise his authority, and, under the statute, it would seem that the necessity of an officer arming himself for the exercise of these general duties is a question to be determined by the facts and circumstances arising in the case."

In Voils v. Commonwealth, 228 Ky. 149, 14 S.W.2d 381, a similar ruling was had. It was indicated in the opinion that an officer has the general duty to maintain peace in his community, that he may reasonably prepare for his own protection in the exercise of his general duty, and that the statute was not intended to limit the right to carry a concealed weapon for a specific errand only. This case also held that a special instruction under the statute should have been given.

The facts presented in Wallace v. Commonwealth, 197 Ky. 233, 246 S.W. 466, 467, parallel, to some extent, those presented here. There the defendant was a game warden who went from Irvine through Richmond to Boonesboro for the purpose of making an arrest. On his way back home he stopped in Richmond, went to a dance hall and upon leaving it was arrested for being drunk. A search disclosed that he had a concealed weapon upon his person. It was said:

"He had, as any other police officer, the right to have a deadly weapon concealed on his person at the time of making the arrest, and obviously in going to and returning from the performance of such duties, if it was reasonably necessary for his protection. Ministerial officers required to be on the lookout for criminals and make arrests must be afforded protection, and, when such officer is in the discharge of such duties and has a warrant for the arrest of such person, he comes clearly within the class of persons mentioned in section 1313, Kentucky Statutes, as exempt from prosecution for carrying concealed deadly weapons."

While the foregoing case does not deal specifically with the question of a peace officer who is carrying a concealed weapon outside the jurisdiction of the authority which has appointed him, it recognizes that ministerial officers are charged with the duty to be continuously alert in the detection of criminal acts and criminals and to make arrests when the opportunity is afforded. We would be other than realistic if we failed to recognize the general practice among law enforcing agencies of going beyond the territorial limits of the appointing power to detect and apprehend criminals who have fled from the vicinity in which the crime was committed. The primary interest of locating such men lies in the ministerial officers where the prosecution will take place and even if it is necessary or, at least, appropriate to call in local officers to make the physical arrest, still the duty is upon the foreign officer to locate the accused.

We also must recognize that peace officers, who at the present time work definite shifts, are still charged with the duty under their office to act in times of emergency in behalf of the people generally even if off duty. We believe the statute did not intend that in every interlude between an actual arrest or other direct duty an officer must disarm himself, or expose his weapon.

In the case at bar appellant was certainly acting under his broad duties but, in addition to that, the undisputed proof showed that he was upon a specific journey to locate an alleged offender for the purpose of arrest. We think, therefore, a peremptory instruction should have been given.

We have in the consideration of this case set aside consideration of the personal reprehensible actions of appellant in flour-

ishing his gun in an unlawful manner. This is something we believe addresses itself to the punitive power of the agency which appointed him. It would be inappropriate to handicap the vast majority of conscientious police officers in the fulfillment of their duties in order to punish one man who had not fulfilled the obligation of his office.

The judgment is therefore reversed with instructions that the indictment be dismissed.